The final case for argument this morning is 15-5117, Meyer Group v. United States. May it please the Court, the trial court made one broad error. Rather than analyze the circumstances of the case to determine a reasonable temporal limit for this extension clause, it instead analyzes the circumstances of the transaction, in this case the Seventh Amendment. The trial court correctly held that the extension clause is indefinite and subject to a reasonable temporal limit as a matter of law, and that's under general principles of government contract law. In the absence of a specified time period for performance, performance must be rendered within a reasonable time. Meyer's arguments at 13-15 of their brief that the trial court should not have applied a reasonable time limitation lack merit. PRC's decision deadline is in effect an argument that trying to read into the brokerage agreement a non-existent decision deadline from a lease that was signed 11 months after the parties signed the brokerage agreement. Even if such a limitation were legally proper, the deadline was actually a dead letter as shown by the landlord extending it by 19 months. Meyer's attempt to add a negotiation requirement with testimony runs afoul of the plain language of the requirements of the contract. What's the plain language in the clause that is issued here? Yes, Your Honor. Plain language of the clause. The extension clause, Your Honor, reads, subsequent to the expiration or termination of this agreement, we will continue to recognize the Meyer Group Limited as our exclusive broker and the procuring cause in accordance with the provisions hereof with respect to any prospective locations that have been submitted by the Meyer Group Limited during the term of this agreement. Okay. That's the clause that is issued. What's limiting about that? I mean, what time frame? Your view is reasonable time frame is not sufficient or that the district court erred in saying that this was a reasonable time frame? The district court erred in, well, the district court performed the wrong inquiry. What they did was they looked at the specific transaction and said, was this transaction performed within a reasonable time? They didn't look and decide what is the reasonable temporal limit that should apply to this clause. Well, what does this clause tell you about what the reasonable limit should be? Nothing. Well, what this reasonable, what the clause tells us, Your Honor, within its placement within the contract is that this is a extension clause within a brokerage agreement and there's all sorts of additional, uh, you know, when this court, when this, when this type of situation is, it doesn't have any time frame, right? Yes, Your Honor. That's correct. But it does have a criteria. And the criteria is, is we will continue to recognize the Meyer Group as our exclusive broker and the procuring cause in accordance with the provisions hereof with respect to any prospective locations that have been submitted by the Meyer Group during the term of this agreement. That suggests, does it not, that it's any prospective locations that were submitted during the term of this agreement? Right, Your Honor. And that's, that's not under dispute. What's under dispute is the fact that, uh, what this clause allows, let me, let me give a hypothetical. What this clause allows is, uh, they submitted, the Meyer Group submitted 29, uh, locations during the term, uh, of the agreement. Um, and Meyer now and forevermore, uh, should PRC go to any of those, any of those locations, uh, can make a claim, uh, on, based on, based upon having submitted. That may be true with respect to some of the other properties that Meyer included in the list. But with respect to these properties, it's clear that these were, were procured by Meyer during the term of the agreement. So you're asking us to speculate, I think, as to other properties and this thing may go on into perpetuity, but, but here we're dealing with two properties and these were procured during the term of the agreement. Well, Your Honor, I guess just, just to be clear, we're, we're dealing with one property. I mean, there's different spaces within, uh, 901 New York Avenue. Two transactions. Two transactions. Yes, Your Honor. Um, but I guess the, the premise of your question is that there, it must be cut off, uh, that 901 New York Avenue is cut off, um, and that all the rest of the buildings must be cut off. But where is the cutoff? I mean, unless you read in the reason. I mean, I, what I'm suggesting is that if you have a problem, if you have a case involving one of the other properties, and let's say it comes to us 50 years from now, then we could probably look at this and go, this isn't, uh, this, this agreement runs into perpetuity, but that's not the situation here. I mean, you're dealing with two transactions, um, both of them were notified shortly after the termination of the agreement. They both involve one single property that, that was, uh, procured by Meyer during the term of the agreement. I don't understand the basis of your complaint that there's an unreasonable time period here that's been breached. Yes, Your Honor, and, and, uh, let me, let me try. Uh, what, what, the reason it's unreasonable is because the time period that has been granted is 655 days, okay, and the analysis that should have taken place is, this is an extension clause. What types of time periods are typically applied to these types of clauses in the brokerage industry and, and, and what are those? That's what this court's case law says. When the federal common law doesn't resolve this issue, you're to look in the best of decision and, and discussion on this topic, um, and the court did not do that. What the court did is it went straight to the issue of, is this a reasonable amount of time? Now, we, we disagree, we, we disagree with lots about how the transaction was analyzed, et cetera, but getting to your fundamental point of why is that a problem? And the answer is because it, it gets rid of everything else. It gets rid of the DC code, it gets rid of all the case law that we cited. It also gets, uh, rid of the expert testimony. All of that needs to be considered in advance of applying whatever limit, uh, was ultimately was chosen. Now, I... Do, do any of those references that you just referred to provide a hard and fast rule for what a reasonable time frame is? Well, the DC code applies a hard and fast rule, Your Honor, in this situation. It applies 90 days. Now, all the parties agreed that the DC code doesn't apply here. Yes, Your Honor. We haven't, we, we're not raising, we, we argued below that the DC code applied directly. We're not raising that argument here. Here we're simply raising it as an indication of the types of limitations that these agreements are typically subject to. 90 days is one. We cited volumes of case law that show somewhere in the area of 6 to 12 months. Our expert testimony testified in 6 to 12 months. The whole point of our appeal here, Your Honor, is that all of that should have been considered and, and, and I'm not asking, I'm not saying that the court has to do all that in a vacuum. I understand that it has the transaction and it can, and it can consider that transaction and the circumstances of that transaction, but it can't ignore the rest of it. And that is what happened here. It skipped straight to determining whether or not, uh, this, this specific transaction was done in a reasonable time. And it did so based on the specific things of this transaction. And that really boils down to not much of an inquiry because the court's... It's reasonable to read the, uh, federal claims court decision as contemplating a two-year window. You know, at J.A. 29, she first starts off saying the plaintiff is arguing for a one to two-year window and the defendants are arguing for a 6 to 12-month window. And then she points to, then on the next page, how your expert said that two pages under some circumstances could be a reasonable time period. And then she ultimately cuts off one of the Brian Cave leases because it was beyond two years. So, I guess the point is, is maybe she was using a two-year window as the marker for what is a reasonable time. Right. And, and even if she were, Your Honor, I don't think that changes, uh, I don't think that's what she did, but even if she were, even if the trial court was doing that, I don't think that's, uh, I don't think that was, uh, that wouldn't cure the issue here. Because even a two-year, Your Honor, case law, no two-year. Our expert testimony, 6 to 12 months. To clarify on our expert's testimony, our expert's testimony was, is there a situation where parties might agree to a two-year extension clause where within this term, the term that we just read, the Meyer term, let's assume that, that parties could agree that we're going to cut this off after 24 months. And our expert properly testified that, yes, that could happen. Your expert also could have done 6 months or 12 months or 90 days. They didn't do that either. Yes, Your Honor. That's your position of what you want wasn't included in the contract either. I, I agree with that wholeheartedly, Your Honor, but the way, the way that the, the way that the law provides these things are to be resolved is that, uh, the court is to look to the best of decision and, and modern discussion on this topic and, and, and Meyer cannot cite a case, cannot cite a case where they, where there has been a recovery, uh, after this amount of time based upon an extension clause. And it's very important to note, I believe it's page 19 of their brief, they cite 4 cases. None of those cases is an extension clause case. Every single one of those cases is a recovery based upon a broker who, who, uh, put a land, put a tenant in a building and then there was an extension or renewal. And there is specific language. Well, are, are any of your cases relating to commercial real estate leasing for a really large tenant? No, Your Honor. We don't have any, uh, specific cases, uh, that, that sort of... Your cases seem to be more about property sales. That's the main thrust of them. Some of the cases, yes, Your Honor. There are, and, and I think what that goes to, Your Honor, is there, there isn't, there isn't a lot of case, there isn't a lot of case law out on, here on this. And I think the reason for that is because, first of all, most extension clauses simply are not drafted like this. So then maybe it does come down to the experts. And then we have an expert on one side with 29 years of experience in the local area on commercial real estate leasing. And then we have another expert that acknowledged that he's actually not an expert when it comes to commercial real estate leasing. Well, Your Honor, the court found that he was an expert and qualified him as an expert. He qualified him, but your, didn't your expert say what I just said he said? About the... That he doesn't really regard himself as an expert with respect to commercial real estate leasing? Yes, Your Honor. But that's not what we brought him for an expert for. We brought him as an expert in these types of agreement and he was qualified as an expert for that purpose. And his testimony was 6-12. Well, what kind of agreement is this if it's not a, you know, commercial real estate leasing relationship? Well, this is, it's a brokerage agreement, Your Honor. Yeah. I mean, a brokerage agreement is a brokerage agreement. I don't think that my, I don't think my expert's expertise is, you know, I mean, he's drafted numerous of these agreements. That being the case, we're looking to interpret this brokerage agreement. And in regard to what the experts say, the agreement itself says that the extension clause stays in effect as long as subject to the expiration of termination. There are no time periods written in, 90 days or 120 days, just as long as, as long as the brokerage agreement itself is in effect, then the extension clause remains in effect. I, I think I understand your question. Well, I guess what I'm saying is that you negotiated, the government negotiated a contract here. Shouldn't you have to live by it? I mean, these are the terms, the terms of the agreement are pretty clear. Yes, Your Honor. I agree with you. I agree with you that it's clear and it clearly omits a term and that leads to a reasonable term. And I agree that the terms are bad. Why should we let the government change the terms of the contract at this point? Because the law demands that. Because the law, because there's case law out there that says without a reason, there's case law of Mellos, Messick, I cite numerous cases in my brief that where in this situation, it is subject to a reasonable term. A broker does not get, or a broker does not get an indefinite term. And make no mistake about it, Your Honor, that is what this is. It is indefinite. It can go on forever. Meyer tried to run away with that, run away from that at trial. They tried to add limitations. They tried to say they wouldn't make claims. Well, Meyer said they're not going to claim any other transactions under the agreement, correct? Yes, Your Honor. They said that. We're only limited to these two transactions. The argument, or the ghost, the specter of this perpetuity going on, and Meyer 100 years later can come back and claim some sort of compensation, that doesn't exist here. Well, Your Honor, it may not. The fact is, we don't know. We'll have to wait and see. Well, they already said they're not going to do it. Your Honor, I mean, I guess I could...      It would be the same thing. It would be the same thing. It would be the same thing. It would be the same thing. I can guarantee you, I'll say, Meyer, didn't you say already that you disallowed, you're not going to pursue these transactions? And, Your Honor, I appreciate that fully, and I understand your point, but that doesn't go to the issue of contract interpretation. Can I just step back? When you're talking about contract... What we've already established here, just this morning, is that the contract which you were party to doesn't provide a time limit. You're saying, we all agree the D.C. Code limit doesn't apply.     We all agree that the D.C. Code doesn't apply. And that's what the California Court of Federal Claims has ruled definitively. And we're relying on the District Court's, the Court of Federal Claims' choice between the testimony of two experts, as to what she thinks is reasonable under these circumstances. What first is the standard or review you would suggest that we would apply to that determination? Your Honor, I believe the standard review is, this is an error of law, and the reason it's an error of law is because the wrong inquiry was conducted. Tell me that.     I don't think the court is going to be able to apply it. Because, Your Honor, what the trial court did is, rather than go back to this clause, and then look at the expert testimony, the D.C. Code, and the case law, and I would also disagree with you that the case law is not definitive about the times, because if it was, then the Meyer Group could provide a 24-month or 18-month or whatever, and they can't, because it's not out there. But that is the inquiry that needed to have been made, and that was not the inquiry that was made. The inquiry that was made was, was this transaction done in a reasonable length of time, based on all the facts. Let me just go back. The inquiry, let me understand what you're saying. The inquiry should have been that she should have looked at the D.C. Code. The inquiry should have considered the D.C. Code as the best in modern decision and discussion with regards to how these types of agreements are limited when a temporal limit is omitted. Yes, Your Honor. She should have looked at that. The trial court should have looked at that. The trial court also should have looked at the case law to see what types of limitations do parties put into these agreements when there is a limitation in these agreements. And then finally, as was done, the expert testimony should have been considered. And more to that point, I see a moment. More to that point, Your Honor, there was no credence lended to their expert testimony. I'm sorry. No credence lended to their expert testimony. It wasn't even discussed because it went along for about six or seven years. And the trial court did not find that credible. Thank you. Thank you. We'll restore two minutes of rebuttal. Michael Ross on behalf of the Meyer Group Limited. May it please the Court. The plain language of the extension clause should be enforced as drafted. In its reply brief, and if I heard my friend and colleague correctly. Well, what does the plain language give you in terms of the time frame? It has no time. So you're saying it's unlimited? Yes. That's not what the district court found. Correct. We argued below that there was no need to engage in a reasonable period of time analysis because the contract language is unambiguous. You cannot resort under this Court's precedence to extrinsic evidence whereas here the contract language is unambiguous. In their reply brief, the government makes a subtle but significant acknowledgement. They write, and I quote, the Court, referring to Judge Williams, held and we do not challenge that Meyer's extension clause was unambiguous. If I heard Mr. Hoffman correctly here today, he also agreed that it's unambiguous. Under this Court's numerous precedence, if the contract language is unambiguous, there is no basis to resort to extrinsic evidence as the district court did here. So our view, Your Honor, is the fact that all parties agree. There was a dust-up in the briefs about whether or not you can claim this as an alternative rather than that you would have needed to file a cross-appeal. That is a specious argument, and we ask merely that Judge Williams' judgment in our favor be affirmed. I would have been in violation of this Court's rules if I had cross-appealed when I'm not seeking modification of the court of claims judgment. I'm making in this appeal the very same legal argument I made in the law. But if we make a legal judgment in this case that you are asking for us now, that means that the other cases that she decided against you on, because she assumed the time frame exceeded a reasonable amount of time, would have to be revisited, would they not? It does not, Your Honor. Just to clarify, 98% of the damages we sought from the court of federal claims related to the seven-year lease extension memorialized in the Seventh Amendment. The other three transactions were tiny compared to that very large transaction. So the commissions my client were entitled to on those three small spaces are comparatively trivial. After we got the court of federal claims opinion, we analyzed, is it worth, from a cost-benefit perspective, appealing our loss on those two small transactions? We decided it would cost more in attorney's fees to cross-appeal and file an extra brief that was at stake. It's only about $5,000. Now, with regard to the clarity of the language, so what are you saying? That this could last in perpetuity? What are the parameters of what you think we ought to read into the clear language? Well, as a practical matter, it can't go on forever. They needed, they being the PRC, needed to resolve their office space situation by June 2012 at the very latest because then their landlord had a unilateral right to terminate their lease and another tenant in the building, Goodwin Proctor, the law firm. Well, that may be true of the circumstances in your case, but I don't know how many other contracts the government has with persons such as yourself that has this exact language. So you're asking us to construe this as going on forever. There might be circumstances that differ from yours. If I hear Your Honor's question correctly and understand it correctly, what I'm saying is somewhat different. In this particular case that's before this court, because all parties, including the government, agree that the contract, the extension clause, is unambiguous, there's no legal ability or basis to resort to extrinsic evidence or engage in a reasonable period of time analysis. And if there's another case out there that presents a different factual scenario, I'm not aware of one, but this is the only contract that I have with the government. So your reading that it's unambiguous is simply because if there was anything that they submitted while they were working there, that's one limitation, right? It's not a temporal limitation. Correct. There's no temporal limitation. And it has to have been included on the list. And it will be corrected. And short of that, there are no limitations. I mean, everything goes on the list. Well, I think it's a practical matter. In the real world of commercial leasing, there is a very real limitation. That is, they've already solved that lease challenge that my client was assisting with. That is, what are they going to do beginning June 2012 thereafter? They entered a seven-year lease extension in 901 New York. In 2022, or a year or two before, when they decide, should we stay here, or should we explore other options in other commercial office buildings in D.C., that's a new office space search with respect to which my client will have absolutely no involvement and will not be in a position because he's not their broker to submit for their consideration any property for lease beginning in 2022. So as a practical matter, although they make a big deal about this end perpetuity issue, in the real world of commercial leasing, there's no possibility that this is going to go on at all because the situation has already been resolved. So you're suggesting that the parties didn't have to negotiate a timeframe because the criteria that are included in here necessarily are a limited universe. Your Honor just stated it much better than I did. Yes, that's exactly what we're saying. So what if a client is thinking about moving, and then you submit various properties, and they don't make any decision. They don't make any decision for ten years. And then ten years later, now the brokerage relationship has been terminated for ten years. They decide, oh, we should move, and let's move now. We're going to move to Alexandria. And it turns out that the Alexandria property was something that you had submitted to them ten years earlier. Are you saying even though they long forgot about any contact they had with you or any relationship they had with you, that now they'll be on the hook if they later on, ten years later, maybe through a different broker, land on that same Alexandria property? That would be an extremely unusual situation, but accepting the premise of the hypothetical. The answer would be yes. That's what the parties, these are sophisticated parties. That's what they agreed to. In the real world, that would never happen. Nobody thinks, hey, I've got ten years remaining on my lease. Maybe I should consider what I'm going to do ten years out. In the initial transaction, let's say you were helping them with the lease on that particular property. Then later on, when they do move to that property, it's under a rental agreement. So this isn't something that Meyer would have helped them with, correct? I apologize. I'm not following Your Honor's question. Okay. If you move into a property, let's say the Alexandria property, and you are assisting with them today on a lease agreement on that particular property, it falls apart. Ten years later, the government moves to that property and rents on a month-to-month basis. Are you saying that at that point, Meyers would still be eligible to be looked at as the procurement factor? So they do move into the new property. Right, but not under the terms you helped them with. Well, as the extension clause is written and the way these brokerage agreements work, where he, my client, is the exclusive broker, any rental of any property submitted by my client during the term of the agreement would be subject to his right to a commission. So I think the answer would be yes. So again, the parties apparently agree on appeal. I'll acknowledge that below, the government quite emphatically argued that the extension clause was ambiguous. On appeal, on page 12 of the reply brief, they acknowledge that it is unambiguous. We agree with that, and in light of that, we think there's absolutely no basis to resort to extrinsic evidence or engage in a reasonable period of time limitation. I'm just looking for page 12, gray, where you say, all I see is the net result of ambiguity. Maybe I'm looking at the wrong thing. It's the second sentence in the first full paragraph on page 12 of the reply. I can read it if it would help. Yeah, why don't you read it? Quote, Meyer is correct that the term at issue in Consumer's ICE was held to be ambiguous and that the court held, and we do not challenge, this is the court's referral as a reference to Judge Williams, quote, that Meyer's extension clause was unambiguous. So they acknowledge, if I read this correctly, that we do not challenge that Meyer's extension clause was unambiguous. That's exactly our position, both in front of Judge Williams and in this court. I kind of read that as they were talking about some other ambiguity, other than whether or not. It's very subtle, but I also heard my friend today acknowledge that the extension clause is unambiguous. And in light of that, I think this court's precedents are quite clear. No extrinsic evidence is to be considered. The plain language of the contract controls and must be enforced. But if we reject that, then you would fall back on the argument. Correct, and to answer your Honor's question earlier to Mr. Hoffman, I think it's quite clear that Judge Williams' determinations as to whether these two transactions at issue on appeal occurred within a reasonable period of time following termination, that would be reviewed for clear error. Those were factual findings, and she referred specifically to her finding that these transactions occurred within a reasonable period of time. There is ample record evidence to support those factual findings by Judge Williams. There's no basis at all to reverse for clear error. If the court would be helpful to the court, I'm happy to get into that evidence. But if there are no further questions, I'll yield the balance of my time. Thank you. You want to just clarify that one point about whether you think the contract is that the clause is ambiguous or unambiguous? No, Your Honor. We challenged that it was ambiguous. We argued that it was ambiguous below. That holding is not something we appeal, but we don't need ambiguity. All we need is indefiniteness, and the case law on that is legion. Beck Construction, Societe Annae Mime, Gustavino, we don't need ambiguity. All we need is indefiniteness. And the fact that this can go on forever, so I disagree sort of with the premise that based upon a lack of ambiguity, they win. The other thing I would like to, I think there may be some confusion about what submission covers. Let's be very clear about what submission is. For a property to have been submitted, and the experts were in agreement on this below, a property can be submitted by driving by it and going, that's a building that has space for lease. That building is now submitted. These are not submittals. These are not proposals. These are not lease terms. These aren't LOIs. These are, this is the barest connection with the building, and that is the problem with this term, is that you have a minimal, minimal connection to that building, and then it goes on forever. Can you send a map and say in circle downtown D.C. and say these are all potential properties? Essentially, Your Honor, yes, they can. If you look at JA 1327, this is dated January 14, 2010. This is a market survey and financial analysis. This was sent by the Meyer Group, and there's another one of these that was sent back before. I guess what's disturbing to me about this argument is that you're a party to these clauses. You're one side of this. If you're saying that, then that's probably problematic, even with respect to the six-month or the one-year cutoff that you're arguing for here. So it's a little odd to me that you're complaining about how broad this is. Well, no, Your Honor. The concerns you're raising with that would apply concerns at one year, just like two years, right? Well, no, Your Honor. I think that the breadth of the minimal of interaction that's necessary goes to how long a term you get. You don't get a two-year term, or in this case forever, when all you have to do is submit a list of properties, and that's my point in distinguishing all the case law. And I'm not going to get into it here, but it is in my briefs. I distinguish all of their cases because, in general, those are cases with landlords, and those are for very finite periods of time. So— Do you have one final point? No, Your Honor. That's all I have. Thank you. We thank both sides for cases submitted. That concludes our proceedings for this morning. All rise.